UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF NEWARK

| | |
|---|---|
| MARTIN LUTHER BASKERVILLE, JR. | : <br> : <br> : HON.  CLAIRE C. CECCHI, U.S.D.J. <br> : HON.  EDWARD S. KIEL, U.S.M.J. |
| Plaintiffs, | : <br> : |
| v. | : Civ. Dkt. # 2:15-cv-06463 <br> : |
| LAURA (LORRIE) JACKSON, et al., | : <br> : <br> : |
| Defendants. | : <br> : |

BRIEF IN SUPPORT OF DEFENDANT JACKSON'S
MOTION FOR SUMMARY JUDGMENT

GURBIR S.  GREWAL
ATTORNEY GENERAL OF NEW JERSEY
Richard J.  Hughes Justice Complex
25 Market Street
P.O.  Box 112
Trenton, New Jersey 08625-0112
*Attorney for Defendant Jackson*
Michael.Vomacka@law.njoag.gov
(609) 376-3223

Michael Vomacka
Deputy Attorney General
  On the Brief

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT.............................................1

PROCEDURAL HISTORY................................................1

STATEMENT OF FACTS...............................................2

STANDARD OF REVIEW...............................................2

LEGAL ARGUMENT

    POINT I

    DEFENDANT JACKSON IS ENTITLED TO SUMMARY JUDGMENT
    BECAUSE THE CLAIMS AGAINST HER ARE BARRED BY THE
    STATUTE OF LIMITATIONS......................................3

        A.  All claims against Defendant Jackson are
        subject to two-year statutes of limitations
        ......................................................4

        B.  Plaintiff's claims are barred because
        they were filed after the statute of
        limitations expired ..................................6

        C.  Plaintiff's claims are not saved by
        tolling because he did not exhaust his
        administrative remedies, and the steps he
        did take do not provide sufficient tolling
        ......................................................7

    POINT II

    DEFENDANT JACKSON IS ENTITLED TO SUMMARY JUDGMENT
    BECAUSE PLAINTIFF FAILED TO EXHAUST HIS
    ADMINISTRATIVE REMEDIES.....................................8

        A.  The Exhaustion Requirement Applies to
        Plaintiff's Federal Claims ..........................11

i

B.    Northern  State  Prison's  Remedy  System
meets   the   definition   of   "administrative
remedy"   within   §   1997e(a)'s   exhaustion
requirement .........................................12

C.  Plaintiff failed to exhaust all his administrative
remedies before filing this lawsuit because
he did not appeal an inmate remedy form .............14

D.    The  evidence  demonstrates  that  the
Inmate Remedy System was available and known
to Plaintiff .......................................15

POINT III

TO THE EXTENT PLAINTIFF'S COMPLAINT ADVANCES ANY
STATE LAW CLAIMS AGAINST DEFENDANT JACKSON, HIS
CLAIMS FAIL BECAUSE HE DID NOT FILE A TORT CLAIMS
NOTICE.....................................................15

POINT IV

DEFENDANT JACKSON IS ENTITLED TO SUMMARY JUDGMENT
ON PLAINTIFF'S FAILURE TO PROTECT CLAIM BECAUSE
HE HAS NOT ADDUCED EVIDENCE SUFFICIENT TO SUPPORT
HIS CLAIM..................................................18

A.  Plaintiff has failed to adduce evidence
demonstrating  he  was  incarcerated  under
conditions  posing  a  substantial  risk  of
serious harm .......................................19

B.   Plaintiff  has  failed  to  establish
evidence   that   Defendant   Jackson   was
deliberately  indifferent  to  a  substantial
risk to his health and safety ......................22

C.  Plaintiff has failed to establish that
deliberate indifference by Defendant Jackson
caused him harm indifferent to a substantial
risk to his health and safety ......................25

ii

POINT V

PLAINTIFF'S FAILURE TO PROTECT CLAIM ALSO FAILS
BECAUSE HE CANNOT SHOW THAT DEFENDANT JACKSON HAD
A REASONABLE OPPORTUNITY TO INTERVENE AND REFUSED
TO DO SO...................................................26

    A.   Defendant Jackson did not have a
    reasonable opportunity to intervene before
    inmate Jordan's attack because it was not
    reasonably foreseeable ............................26

    B.   Once inmate Jordan attacked Plaintiff
    Baskerville, Defendant Jordan took
    reasonable steps to intervene ......................28

POINT VI

SUMMARY JUDGMENT SHOULD BE GRANTED TO THE
DEFENDANT JACKSON BECAUSE SHE ARE ENTITLED TO
QUALIFIED IMMUNITY........................................30

    A.   Defendant Jackson's conduct did not
    violate a federal statutory or
    constitutional right ..............................30

    B.   Defendant is entitled to qualified
    immunity because there was no clearly
    established precedent that her actions were
    unlawful ..........................................31

POINT VII

SUMMARY JUDGMENT SHOULD BE GRANTED AS TO
PLAINTIFFS' CLAIMS FOR COMPENSATORY DAMAGES AND
PUNITIVE DAMAGES..........................................34

CONCLUSION................................................36

## TABLE OF AUTHORITIES

**Cases**

Abdul-Akbar v. McKelvie,
 239 F.3d 307 (3d Cir. 2001) ................................................................ 11

Ahmed v. Dragovich,
 297 F.3d 201 (3d Cir. 2002) ............................................................... 11

Anderson v. Liberty Lobby, Inc.,
 477 U.S. 242 (1986) ........................................................................ 2,3

Ashcroft v. Al-Kidd,
 563 U.S. 731 (2011) ........................................................................ 32

Atkinson v. Taylor,
 316 F.3d 257 (3d Cir. 2003) ............................................................... 19

Awal v. Hollingsworth,
 No. CV 17-8486, 2018 WL 1003831 (D.N.J. Feb. 21, 2018) ................... 19

Baldwin v. Brown,
 No. CV 18-16213, 2019 WL 4187578 (D.N.J. Sept. 4, 2019) ............... 24

Bauer v. Dantis,
 77 F.3d 492 (10th Cir. 1996) ............................................................... 21

Beers-Capitol v. Whetzel,
 256 F.3d 120 (3d Cir.2001) ............................................................... 22

Bistrian v. Levi,
 696 F.3d 352 (3d Cir. 2012) .................................................... 19,22,23

Bizzell v. Tennis,
 447 Fed.App'x. 112 (3d Cir. 2011) ...................................................... 27

Blackstone v. Thompson,
 568 Fed.App'x. 82 (3d Cir. 2014) ....................................................... 20

Blanchard v. Gallick,
 448 Fed.App'x. 173 (3d Cir. 2011) ...................................................... 20

Bolla v. Strickland,
  304 F.App'x. 22 (3d Cir. 2008) .................................................. 10

Booth v. Churner,
  206 F.3d 289 (3d Cir. 2000) .................................................. 10

Brosseau v. Haugen,
  543 U.S. 194 (2004).................................................. 33

Brown v. Foley,
  810 F.2d 55 (3d Cir. 1987).................................................. 5

Celotex Corp.  v. Catrett,
  477 U.S. 317 (1986).................................................. 2, 3

Cito v. Bridgewater Twp. Police Dep't,
  892 F.2d 23 (3d Cir. 1989).................................................. 5

Concepion v. Morton,
  306 F.3d 1347 (3d Cir. 2002) .................................................. 12

Cutter v. Wilkinson,
  544 U.S. 709 (2005).................................................. 9

D.C. v. Wesby,
  138 S. Ct. 577 (2018).................................................. 30,31

Day v. Fed. Bureau of Prisons,
  233 F.App'x 132 (3d Cir. 2007) .................................................. 23

Dique v. New Jersey State Police,
  603 F.3d 181 (3d Cir. 2010) .................................................. 5

Epstein v. State,
  311 N.J.Super. 350 (N.J. App. Div. 1998) .................................................. 17

Farmer v. Brennan,
  511 U.S. 825 (1994).................................................. 18,22

Freeman v. Miller,
  615 F. App'x 72 (3d Cir. 2015) .................................................. 7

Gomes v. Cty. of Monmouth,
  444 N.J. Super. 479 (App. Div. 2016).................................................. 16

*Hamilton v. Leavy*,
  117 F.3d 742 (3d Cir. 1997) ................................................................ 19

*Henderson v. Herman*,
  373 N.J. Super. 625 (N.J. App. Div. 2004) .................................... 17

*Hoag v. Brown*,
  397 N.J. Super. 34 (App. Div. 2007) ................................................ 16

*Jetter v. Beard*,
  183 F.App'x. 178 (3d Cir. 2006) ........................................................ 10

*Jones v. Bock*,
  549 U.S. 199 (2007) ................................................................................. 9

*Kamienski v. Attorney Gen. New Jersey*,
  No. CIV. A. 11-3056 PGS, 2012 WL 4034236
  (D.N.J. Sept. 12, 2012) ........................................................................ 17

*Knox v. Doe*,
  487 F. App'x 725 (3d Cir. 2012) ...................................................... 26

*Mammaro v. N.J. Div. of Child Protection & Permanency*,
  814 F.3d 164 (3d Cir. 2016) .............................................................. 33

*Marino v. Industrial Crating Co.*,
  358 F.3d 241 (3d Cir. 2004) ............................................................... 3

*Marsh v. Arn*,
  937 F.2d 1056 (6th Cir. 1991) ........................................................... 22

*McDonough v. Smith*,
  139 S.Ct. 2149 (2019) ............................................................................ 5

*McMillan v. Wal-Mart Stores, Inc.*,
  No. A-1043-08T2, 2009 WL 1940407 (N.J. App. Div. 2009) ............... 4

*Messerschmidt v. Millender*,
  565 U.S. 535 (2012) .............................................................................. 26

*Mitchell v. Horn*,
  318 F.3d 523 (3d Cir. 2003) .............................................................. 35

vi

Morgan v. Union County,
  268 N.J. Super 337 (N.J. App. Div. 1993) .................................................. 16

Mullenix v. Luna,
  136 S. Ct. 305 (2015) ...................................................................................... 32

Oshiver v. Leving, Fishbein, Sedran & Berman,
  38 F.3d 1380 (3d Cir. 1994) ........................................................................... 5

Pearson v. Callahan,
  555 U.S. 223 (2009) .................................................................................. 30,31

Pearson v. Sec 'y Dep 't of Corr.,
  775 F.3d 598 (3d Cir. 2015) ........................................................................... 7

Pennsylvania Dep't of Corr.,
  848 F.3d 549 (3d Cir. 2017) ......................................................................... 31

Plumhoff v. Rickard,
  134 S. Ct. 2012 (2014) .................................................................................. 33

Porter v. Nussel,
  534 U.S. 516 (2002) ....................................................................................... 10

Prater v. Dahm,
  89 F.3d 538 (8th Cir. 1996) ......................................................................... 22

Reichle v. Howards,
  566 U.S. 658 (2012) ....................................................................................... 32

Ross v. Blake,
  136 S. Ct. 1850 (2016) ..................................................................................... 9

Saldana v. Kmart Corp.,
  260 F.3d 228 (3d Cir. 2001) ........................................................................... 3

Sameric Corp. of Del., Inc. v. City of Philadelphia,
  142 F.3d 582 (3d Cir. 1998) ........................................................................... 4

Saucier v. Katz,
  533 U.S. 194 (2001) ....................................................................................... 32

Smith v. Mensinger,
  293 F.3d 641 (3d. Cir. 2002) ....................................................................... 34

Smith v. Wade,
  461 U.S. 30 (1983) ........................................................................... 47

Spruill v. Gillis,
  373 F.3d 218 (2004) ................................................................... 13, 14

Velez v. City of Jersey City,
  180 N.J. 284 (N.J. 2004) ............................................................... 22

White v. Pauly,
  137 S. Ct. 548 (2017) .................................................................... 43

Williams v. City of York, Pennsylvania,
  967 F.3d 252 (3d Cir. 2020) ......................................................... 43

Williams v. Sec'y Pennsylvania Dep't of Corr.,
  848 F.3d 549 (3d Cir. 2017) ......................................................... 40

Woodford v. Ngo,
  548 U.S. 81 (2006) ..................................................................... 12, 13

Zaloga v. Borough of Moosic,
  841 F.3d 170 (3d Cir. 2016) ......................................................... 42

**Statutes**

28 U.S.C. § 1915(h) ......................................................................... 11

42 U.S.C. § 1985 ....................................................................PASSIM

42 U.S.C. § 1997e(a) ......................................................................... 9

42 U.S.C. § 1997e(e) ....................................................................... 35

42 U.S.C. § 1997e(h) ....................................................................... 11

N.J.A.C. 10A:1-4.4(c) ..................................................................... 12

N.J.A.C. 10A:1-4.4(d) ..................................................................... 13

N.J.A.C. 10A:1-4.6(d) ..................................................................... 13

`N.J.S.A.` 2A:14-2 ................................................................................................ 5, 6

`N.J.S.A.` 59:8-2 ..................................................................................................... 16

`N.J.S.A.` 59:8-4(e) ............................................................................................... 17

`N.J.S.A.` 59:8-7 ..................................................................................................... 16

`N.J.S.A.` 59:8-8(a) ............................................................................................... 16

**Other Authorities**

`Merriam-Webster.com Dictionary` ........................................................... 21

**Rules**

`Fed. R. Civ. P.` 56(a) ...................................................................................... 2

## PRELIMINARY STATEMENT

This case arises from an attack by inmate Frank Jordan on Plaintiff Martin Baskerville on April 6, 2013 at Northern State Prison. Essentially, Plaintiff seeks to hold Defendant Jackson, a Housing Unit Officer, liable for failing to intervene or protect him from inmate Jordan's sudden attack.

Defendant Jackson now moves for summary judgment because Plaintiff's claims fails both procedurally and substantively.

## PROCEDURAL HISTORY

Plaintiff submitted his complaint to this Court on August 27, 2015. (ECF No. 1). On December 1, 2015, Defendant Jackson filed her answer. (ECF No. 11).

Co-Defendant Kesselman filed a Motion to Dismiss on January 20, 2016, which was granted in part and denied in part on August 24, 2016. (ECF No. 15, 39). In its Opinion, the Court discussed arguments including whether Plaintiff was entitled to tolling of the statute of limitations. (ECF No. 38). The parties engaged in discovery, and the Court granted leave to file dispositive motions. (ECF No. 111, 115).

Now, Defendant respectfully asks the Court to enter judgment in her favor, and to thereby dismiss all of Plaintiff's claims with prejudice.

1

## STATEMENT OF FACTS

Pursuant to L. Civ. R. 56.1, Defendant has filed a separate statement of material facts not in dispute ("SOMF") which will be referenced herein.  In the interest of avoiding repetition, the SOMF will not be reproduced here.

## STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a); e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Ibid.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and

2

all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

Initially, the movant has the burden to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must identify specific facts showing that there is a genuine issue for trial. Ibid. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986). A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

## ARGUMENT

### POINT I

**DEFENDANT JACKSON IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE CLAIMS AGAINST HER ARE BARRED BY THE STATUTE OF LIMITATIONS.**

Defendant Jackson is entitled to summary judgment because Plaintiff's claims are barred by the statute of limitations. The statute of limitations is a hard line, and cases that fall

outside it must be dismissed. <u>See</u> <u>Sameric Corp. of Del., Inc.</u> <u>v. City of Philadelphia</u>, 142 F.3d 582, 599 (3d Cir. 1998); <u>see</u> <u>also</u> <u>McMillan v. Wal-Mart Stores, Inc.</u>, No. A-1043-08T2, 2009 WL 1940407, at *2 (N.J. App. Div. 2009) ("while the dismissal of a complaint *filed one date late* may seem harsh and presents no prejudice to defendant, there has to be a line drawn somewhere, and the Legislature drew it at the two year statute of limitations") (emphasis added).

**A.   All claims against Defendant Jackson are subject to two-year statutes of limitations.**

The Court should construe Plaintiff's Complaint as setting forth a claim under 42 <u>U.S.C.</u> § 1983, which is subject to a two-year statute of limitations.   However, should the Court also construe Plaintiff's complaint as advancing a negligence claim under state law, that claim is also subject to a two-year statute of limitations.

First, the Court should construe Plaintiff's claim against Defendant Jackson as a failure to protect claim under 42 <u>U.S.C.</u> § 1983 subject to a two-year statute of limitations. Plaintiff's Complaint invokes the Eighth and Fourteenth Amendment of the United States Constitution, which suggests a § 1983 claim.   <u>See</u> <u>Plaintiff's Complaint</u>, p. 13.   The length of a statute of limitations for a claim under 42 <u>U.S.C.</u> § 1983 is

4

determined by state law.  E.g., McDonough v. Smith, 139 S.Ct. 2149, 2155 (2019); Dique v. New Jersey State Police, 603 F.3d 181, 185 (3d Cir. 2010).  "In New Jersey that statute is N.J.S.A. 2A:14-2, which provides that an action for an injury to the person caused by a wrongful act, neglect, or default, must be convened within two years of accrual of the cause of action." Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989) (quoting Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987)) (also noting two year statute of limitations in tort actions under 42 U.S.C. § 1985(2) or § 1985(3)).  Thus, the Court should conclude that Plaintiff's claim is subject to a two-year statute of limitations.

Second, although the Court initially construed Plaintiff's claims against Co-Defendants as raising a negligence claim under state law, it should decline to do so for Defendant Jackson. While Plaintiff's claims for the medical defendants refer to "adequate medical care," suggesting a negligent medical malpractice claim, he does not invoke the same language for Defendant Jackson.  See generally Plaintiff's Complaint. Moreover, Plaintiff clarified that he did not advance a state law negligence claims against co-defendants.  See Memorandum Opinion and Order, ECF No. 42, ¶5 ("Plaintiff has already conceded that he filed no notice of claim under the NJTCA,

5

because he asserts that he does not raise any state law claims at all in the Complaint."). However, even if the Court does construe the Complaint as setting forth a negligence claim, it also subject to a two-year statute of limitations. <u>N.J.S.A.</u> 2A:14-2.

For the reasons set forth above, the Court should find that all Plaintiffs' claims are subject to a two-year statute of limitations.

**B.   Plaintiff's claims are barred because they were filed after the statute of limitations expired.**

Plaintiff's claims arise out of injury suffered on April 6, 2013.   <u>See Plaintiff's Complaint</u>, ECF No. 1.   As discussed above, Plaintiff's claims are each subject to two-year statutes of limitations.   <u>See supra</u>.   Therefore, Plaintiff's claims accrued on April 6, 2013, and expired two years later on April 6, 2015.

Plaintiff's claims against Defendant Jackson are barred by the applicable statute of limitations because they were filed after April 6, 2015.   Plaintiff's Complaint was dated August 25, 2015, and received by the Court on August 27, 2015.   <u>See Plaintiff's Complaint</u>, ECF No. 1.   As the Court has already determined, Plaintiff filed his complaint 141 days after the two-year limitations period expired.   <u>See Opinion</u>, ECF No. 38,

6

at p. 12-13.  Therefore, Plaintiff's complaint falls outside the statute of limitations and should be dismissed.

**C. Plaintiff's claims are not saved by tolling because he did not exhaust his administrative remedies, and the steps he did take do not provide sufficient tolling.**

Plaintiff's steps to exhaust his administrative remedies in this case are insufficient to preserve his claims.  Although Defendant Jackson acknowledges Plaintiff is entitled to some tolling for the period in which he sought administrative remedies, the tolling is not long enough to save his claims. See Freeman v. Miller, 615 F. App'x 72, 77 (3d Cir. 2015); Pearson v. Sec 'y Dep 't of Corr., 775 F.3d 598, 603 (3d Cir. 2015); see also Opinion, ECF No. 38, p. 10-13 (addressing tolling of the statute of limitations in motions to dismiss filed by co-defendant); Memorandum and Order, ECF No. 42 (same).

Here, Plaintiff's efforts to exhaust his administrative remedies were not sufficient to preserve his claims. Plaintiff's inmate remedy forms indicate that he:

- Submitted a remedy form dated May 1, 2013, which was responded to via an interview conducted May 10, 2013;

- Submitted a remedy form dated October 3, 2013, which was responded to on October 11, 2013; and

- Submitted a remedy form dated October 23, 2013, which was responded to on November 1, 2013.

see Ex. L, Inmate Remedy System Forms from Plaintiff.  Even if Plaintiff receives tolling for the periods in which he submitted a remedy form and waited for a response, it falls far short of the time he requires here.  That is, Plaintiff would be entitled to only twenty-eight days tolling: ten days (May 1, 2013 to May 10, 2013), nine days (October 3, 2013 to October 11, 2013), and nine days (October 23, 2013 to November 1, 2013).  This is not sufficient to overcome the 141 day tardiness in Plaintiff's Complaint, and thus, tolling is insufficient to save Plaintiff's claims.  Thus, the Court should grant summary judgment to Defendant Jackson because Plaintiffs' claims fall outside the statutes of limitations.

**POINT II**

**DEFENDANT JACKSON IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES.**

The Court should grant summary judgment to the Defendant Jackson because Plaintiff failed to exhaust his administrative remedies before filing suit.  As will be discussed in greater detail below, to exhaust his administrative remedies at NJSP Plaintiff was essentially required to submit an inquiry form, and then appeal the response.  Plaintiff submitted several inmate remedy forms, however, he did not appeal, and therefore did not exhaust his administrative remedies.

8

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005) (same).  "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."  Jones v. Bock, 549 U.S. 199, 204 (2007).  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.  Id.

The United States Supreme Court has repeatedly confirmed that "'[t]here is no question that exhaustion is mandatory under the PLRA.'"  Ross v. Blake, 136 S. Ct. 1850, 1856 (2016) (quoting Jones, supra, 549 U.S. at 202); Woodford v. Ngo, 548 U.S. 81, 85 (2006).  The Court emphasized "that mandatory language means a court may not excuse a failure to exhaust, even to take [] [special] circumstances into account."  Ross, supra, 136 S.Ct. at 1853.  This mandatory exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and

9

whether they allege excessive force or some other wrong." Porter v. Nussel, 534 U.S. 516, 532 (2002).

Moreover, a prisoner must properly "exhaust all available administrative remedies," regardless of whether the administrative process may provide the prisoner with the relief that he is seeking, before proceeding to federal court. Nyhuis v. Reno, 204 F.3d 65, 75 (3d Cir. 2000); Spruill v. Gillis, 373 F.3d 218, 227 (2004). The prison grievance procedures supply the yardstick for measuring whether exhaustion was proper. Spruill, supra, 373 F.3d at 231. See also Jones, supra, 549 U.S. at 205 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289, 300 (3d Cir. 2000); Bolla v. Strickland, 304 F.App'x. 22, 23 (3d Cir. 2008); Jetter v. Beard 183 F.App'x. 178, 180 (3d Cir. 2006).

10

## A. The Exhaustion Requirement Applies to Plaintiff's Federal Claims.

To determine whether the exhaustion requirement applies to a plaintiff, the court considers whether he was a "prisoner" at the time that he filed his complaint.  Ahmed v. Dragovich, 297 F.3d 201, 210 (3d Cir. 2002); see also Abdul-Akbar v. McKelvie, 239 F.3d 307, 314 (3d Cir. 2001).  The PLRA defines a "prisoner" as:

> any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal or the terms and conditions of parole, probation, pretrial release, or diversionary program.

42 U.S.C. § 1997e(h); see 28 U.S.C. § 1915(h) (same definition of "prisoner" in relation to proceedings in forma pauperis.) Here, Plaintiff was incarcerated at the time of the alleged occurrence and when he filed his initial complaint.  See Plaintiff's Complaint, ECF No. 1.  Plaintiff's claims arise from an incident allegedly occurring during his incarceration, and affecting his conditions of confinement.  See generally Plaintiff's Complaint.  Accordingly, because Plaintiff brought this action as a prisoner, the PLRA's exhaustion requirement applies to Plaintiff's claims.

11

**B.    Northern State Prison's Remedy System meets the definition of "administrative remedy" within § 1997e(a)'s exhaustion requirement.**

The PLRA's exhaustion requirement applies to the New Jersey Department of Correction's grievance procedure, known as the Inmate Remedy System.   See Concepion v. Morton, 306 F.3d 1347 (3d Cir. 2002).   In Concepcion v. Morton, the Third Circuit reviewed the inmate remedy system in New Jersey State Prison, another prison under the New Jersey Department of Corrections. Ibid.   The Third Circuit explained that the Inmate Remedy System is "set up to give the inmate population a way to bring complaints, problems, suggestions, etc. to the attention of the Administration of [the Prison] to solve or put into use."   Id. at 1351.   The comprehensive two-step procedure includes both (1) an opportunity for the inmate to make a routine request or request an interview; and (2) an opportunity to appeal the resulting decision or finding.   N.J.A.C. 10A:1-4.4(c).

The Third Circuit found that this process was an "administrative remedy" within the meaning of the PLRA for several reasons.   Concepcion, supra, 306 F.3d at 1352-54. First, it gave inmates the opportunity to inform prison administration about any complaints.   Id. at 1354.   Second, it provided for written responses to inmates.   Id. at 1354-55. Third, the written responses were subject to review by

12

supervisors.   _Ibid._   Fourth, final resolutions required signatures by multiple administrative parties.   _Ibid._  The court particularly emphasized that the grievance procedure furthered an important goal of the PLRA by providing a forum through which inmates could potentially resolve their disputes, thereby reducing the quantity of prisoner litigation.   _Ibid._ Furthermore, for cases ultimately brought to court, the remedy form submitted by the inmate and the written responses provided by the prison administration could facilitate adjudication by clarifying the contours of the controversy.   _Ibid._

As in _Concepcion_, the inmate remedy system at NSP is an effective remedy system under the PLRA that was fully available to Plaintiff.   _See_ _ibid._  As in _Concepcion_, Plaintiff was required to complete an Inmate Remedy Form to receive a final decision.   SOMF, ¶38; _see generally_ Ex. G, _Declaration of Patrick Nogan_.   In order to exhaust his administrative remedies, Plaintiff was required to then appeal the response.   _Id._ ¶¶14, 23-26; _see also_ N.J.A.C. 10A:1-4.6(d).   If Plaintiff had appealed the response, the response to that appeal would exhaust his administrative remedies.   _Id._, ¶¶25-26; _see also_ N.J.A.C. 10A:1-4.4(d) (the administrative appeal must be utilized and fully exhausted prior to an inmate filing any legal action regarding information requests, issues, concerns, complaints, or

13

problems).   This process was the same described, and approved, by the Third Circuit in Concepcion, supra, 306 F.3d at 1350-51.

Based on the holding in Concepcion, Plaintiff was required to properly exhaust all available administrative remedies pursuant to NJDOC procedure before filing this complaint.   As such, Plaintiff was required to submit remedy forms raising his specific claims here.

### C.   Plaintiff failed to exhaust all his administrative remedies before filing this lawsuit because he did not appeal an inmate remedy form.

Plaintiff failed to exhaust all his administrative remedies because he did not appeal any Inmate Remedy Form addressing his allegations of unlawful contact by Defendant Jackson. Specifically, DOC records indicate that Plaintiff submitted remedy forms related to this incident, but did not appeal any of the forms.   SOMF, ¶¶48-53; see Ex. L, Inmate Remedy System Forms from Plaintiff.   Put differently, Plaintiff failed to complete "Part 4" of the forms, and therefore did not appeal the initial responses to his remedy forms.   See ibid.  Because Plaintiff did not appeal his remedy forms, he did not reach the final decision-making level of the facility, and thus did not exhaust his administrative remedies.

14

**D.   The evidence demonstrates that the Inmate Remedy
System was available and known to Plaintiff.**

Plaintiff cannot reasonably assert that the Inmate Remedy
System was unknown or unavailable to him.  Plaintiff was aware
of the process to submit remedy – indeed, he did submit remedy
forms related to this case, but failed to appeal the responses
he received.  Because Plaintiff was able to submit remedy forms
and receive responses, Plaintiff cannot reasonably argue he was
unable to access the inmate remedy system.  Therefore, the Court
should find that Plaintiff had ongoing access to the inmate
remedy system.

Based on the foregoing, Defendant submits that Plaintiff
failed to exhaust his administrative remedies because he did not
appeal a remedy form related to his claims, and therefore his
claims should be dismissed.

**POINT III**

**TO THE EXTENT PLAINTIFF'S COMPLAINT ADVANCES
ANY STATE LAW CLAIMS AGAINST DEFENDANT
JACKSON, HIS CLAIMS FAIL BECAUSE HE DID NOT
FILE A TORT CLAIMS NOTICE.**

Defendant Jackson is entitled to summary judgment on
Plaintiff's common law claims because Plaintiff has failed to
comply with the presentation requirements of the New Jersey Tort
Claims Act ("NJTCA").  To the extent the Court finds Plaintiff's
Complaint advances a negligence claim, the NJTCA applies to such

15

claims. See, e.g., Hoag v. Brown, 397 N.J. Super. 34, 56-63 (N.J. App. Div. 2007) (negligence).

A person bringing a tort claim against a public entity or public official under the NJTCA must give notice to the entity within ninety days of the injury. N.J.S.A. 59:8-8. A claim against the state must be filed either with (1) the Attorney General or (2) the department or agency involved in the alleged wrongful act or omission. N.J.S.A. 59:8-7; e.g., Gomes v. Cty. of Monmouth, 444 N.J. Super. 479, 488 (N.J. App. Div. 2016). A claimant is "forever barred from recovering against a public entity or public employee" if the claimant fails to file the notice of claim with the public entity within 90 days of accrual of the claim. N.J.S.A. 59:8-8(a).

Notice is required to be given to a public entity even when the action lies against a public employee. See N.J.S.A. 59:8-2; e.g., Velez v. City of Jersey City. 180 N.J. 284, 293 (N.J. 2004). When a claimant files a timely claim, but notification has been given in a way that substantially satisfied the purposes for which notices of claims are required, that may satisfy the presentation of the NJTCA. See Morgan v. Union County, 268 N.J. Super 337 (N.J. App. Div. 1993), certif. den. 135 N.J. 468 (1994). The NJTCA generally directs that a claim shall include "the name or names of the public entity, employee

16

or employer causing the injury," but a claims notice that provides enough information to identify allegedly liable public employees can suffice.  See Henderson v. Herman, 373 N.J. Super. 625, 633, (N.J. App. Div. 2004) (citing N.J.S.A. 59:8-4(e)). Under the NJTCA, service of a notice of tort claim act on one public entity does not constitute actual or constructive notice on a different public entity.  Kamienski v. Attorney Gen. New Jersey, No. CIV. A. 11-3056-PGS, 2012 WL 4034236, at *8 (D.N.J. Sept. 12, 2012).  "N.J.S.A. 59:8-2 and -10 makes a clear distinction between a local public entity and the State."  Ibid. (citing Epstein v. State, 311 N.J. Super. 350, 356 (N.J. App. Div. 1998)).

Here, any state law claims advanced by Plaintiff should be dismissed because he failed to file a notice of tort claims. Defendant Jackson was, at all times relevant to this lawsuit, a public employee working for the New Jersey Department of Corrections.  SOMF, ¶3.  Plaintiff's claim arise out of conduct in the scope of Defendant's work as Housing Unit Officer in Northern State Prison, and therefore a tort claims notice was required.  However, Plaintiff has not filed a notice of tort claim.  SOMF, ¶4; see also ECF No. 26, at 6; ECF No. 42, ¶5. Thus, to the extent that Plaintiff's Complaint advances any state law claims, the Court should grant summary judgment to

17

Defendant Jackson because Plaintiff did not file a notice of tort claim.

**POINT IV**

**DEFENDANT JACKSON IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FAILURE TO PROTECT CLAIM BECAUSE HE HAS NOT ADDUCED EVIDENCE SUFFICIENT TO SUPPORT HIS CLAIM.**

Plaintiff's failure to protect claim fails because he has failed to adduce evidence of the three necessary elements. First, Plaintiff cannot establish inmate Jordan posed a substantial risk of serious harm at any time prior to his attack. Second, Plaintiff cannot show that Defendant Jackson was deliberately indifferent to a substantial risk from inmate Jordan. Finally, Plaintiff cannot show that deliberate indifference from Defendant Jackson actually caused him harm.

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to take reasonable measures to ensure the safety of inmates. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). However, "[i]t is not... every injury suffered by one prisoner at the hand of another that translates into constitutional liability for prison officials responsible for the victim's safety." Id., at 834. In Farmer, the Supreme Court established two elements of a failure to protect claim: an objective element, that the

18

"deprivation alleged must be, objectively, sufficiently serious;" and a subjective element, that "the prison official must have a sufficiently culpable state of mind." Ibid. The Third Circuit has articulated the elements of failure to protect claim as requiring: "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012); Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997).

### A. Plaintiff has failed to adduce evidence demonstrating he was incarcerated under conditions posing a substantial risk of serious harm.

Plaintiff's failure to protect claim fails because he cannot establish that first element, or objective component, of his claim. The objective component of the claim requires plaintiff establish "(1) the seriousness of the injury; (2) a sufficient likelihood that serious injury will result under the circumstances present; and (3) the risks associated with circumstances under which the injury occurred violate contemporary standards of decency." Awal v. Hollingsworth, No. CV 17-8486, 2018 WL 1003831, at *3 (D.N.J. Feb. 21, 2018) (citing Atkinson v. Taylor, 316 F.3d 257, 259 (3d Cir. 2003)). For the purposes of this motion, Defendant does not contest that

19

Plaintiff suffered a serious injury. However, Plaintiff has not adduced evidence showing that Defendant Jackson was aware that a sufficient likelihood that serious injury would result under the circumstances present, or that the circumstances violated contemporary standards of decency.

In cases involving inmate-on-inmate attacks, the Third Circuit has routinely found that, under a failure to protect claim, prison officials were not aware of a serious risk where there were no previous incidents of violence between the inmates, even if officials had notice of threats or potential for violence prior to the attack. See Blackstone v. Thompson, 568 Fed. App'x. 82 (3d Cir. 2014) (summary judgment proper because inmate failed to show that officers knew of and were deliberately indifferent to an excessive risk to his safety, where there were no longstanding, pervasive, well-documented or previously noted tensions between prisoner and his cellmate); Bizzell v. Tennis, 447 Fed. App'x. 112 (3d Cir. 2011) (summary judgment proper on plaintiff's failure to protect claim because lack of prior fighting between the two inmates involved, even though plaintiff had informed officers that his cellmate was "crazy," does not indicate that defendants were aware of a serious risk); Blanchard v. Gallick, 448 Fed. App'x. 173 (3d Cir. 2011) (summary judgment proper because defendants did not

20

act with deliberate indifference after plaintiff received two threats from his cellmate and was moved to a different cell, after having been previously attacked by a different cellmate).

Here, Plaintiff has failed to adduce evidence that the conditions of his incarceration posed a substantial risk of harm. As in <u>Blackstone</u> and <u>Bizzell</u>, there is no evidence of prior altercations between Plaintiff and inmate Jordan. Indeed, Plaintiff had no prior relationship with inmate Jordan and had never seen him attack anyone. <u>SOMF</u>, ¶¶5-6. Moreover, the conditions Plaintiff complains of were too vague to indicate a substantial risk of harm: inmate Jordan's threats were not directed specifically at Plaintiff or any specific person. <u>SOMF</u>, ¶8. In short, the facts show less of a threat than similar cases where summary judgment was properly granted to the defendants.

Moreover, the "idle threats" reported by Plaintiff are insufficient to support a failure to protect claims. Indeed, Plaintiff states he observed "idle threats," which literally means "a threat that a person does not really mean to follow through with." <u>See</u> <u>Merriam-Webster.com   Dictionary</u>, https://www.merriam-webster.com/dictionary/idle%20threat. Courts in other jurisdictions have specifically found idle threats do not give rise to a failure to support claim. <u>see</u>

also Bauer v. Dantis, 77 F.3d 492, at *2 (10th Cir. 1996) (approving of district court's reasoning that "a defendant's failure to protect an inmate from idle threats by fellow inmates does not violate the Eighth Amendment"); Marsh v. Arn, 937 F.2d 1056, 1069 (6th Cir. 1991) ("idle threats [between prisoners] are a common occurrence,"), overruled on other grounds by Farmer v. Brennan, 511 U.S. 825 (1994); Prater v. Dahm, 89 F.3d 538, 541 (8th Cir. 1996) ("threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm"). Therefore, the Court should find that the evidence adduced does not demonstrate a substantial risk of harm, and grant summary judgment in favor of Defendant Jackson.

**B.  Plaintiff has failed to establish evidence that Defendant Jackson was deliberately indifferent to a substantial risk to his health and safety.**

In a failure to protect claim, an inmate must show that defendant prison officials knew of and disregarded an excessive risk to inmate safety. Farmer v. Brennan, 511 U.S. 825, 833-837 (1994). The standard is subjective, not objective, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware. Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir.2001); see Bistrian, 696 F.3d at 368 (plaintiff alleged

22

a plausible failure-to-protect claim when he was placed in recreation yard with members of violent drug gang members who were aware inmate had acted as informant against them, despite plaintiff's specific warnings). The deliberate indifference requirement extends beyond a lack of ordinary due care – "it is a state of mind equivalent to reckless disregard of a known risk of harm." <u>Day v. Fed. Bureau of Prisons</u>, 233 Fed. App'x 132, 134 (3d Cir. 2007).

Here, Plaintiff has failed to adduce evidence showing that Defendant Jackson was actually aware of the existence of an excessive risk from inmate Jordan. Plaintiff's Complaint alleged that inmate Jordan was known to be dangerous. <u>See Plaintiff's Complaint</u>. However, DOC records show that prior to the April 6, 2013 incident, the most recent disciplinary violation committed by inmate Jordan was lying to a staff member on October 24, 2012. <u>SOMF</u>, ¶14. And, prior to the April 2013 incident, the most recent record indicating inmate Jordan had fought with another person was from February 24, 2009. <u>SOMF</u>, ¶15. Plaintiff cannot reasonably argue that a fight in 2009 could form a sufficient basis for Defendant Jackson to "actually be aware" inmate Jordan posed a threat in 2013. Indeed, even cases involving inmates with a history of violence have been insufficient to ground deliberate indifference. <u>See Bistrian</u>,

23

696 F.3d at 371 ("the risk that an inmate with a history of violence might attack another inmate for an unknown reason" was too speculative to support finding deliberate indifference); see also Baldwin v. Brown, No. CV 18-16213 (RMB), 2019 WL 4187578, at *4 (D.N.J. Sept. 4, 2019) (history of violence was insufficient to ground 8th Amendment claim).

Here, even if Plaintiff could established inmate Jordan had a clear history of violence, he cannot demonstrate Defendant Jackson had knowledge of these records. Plaintiff has not adduced evidence that Defendant Jackson was aware of any of inmate Jordan's disciplinary history. Plaintiff does not suggest Defendant Jackson observed prior disciplinary incidents, or otherwise knew inmate Jordan was dangerous. And, as discussed above, Plaintiff Baskerville's warnings to Defendant Jackson were insufficient to demonstrate deliberate indifference. See supra (discussing conditions posing a substantial risk of serious harm). Plaintiff's observations that inmate Jordan's lips were shaking and his idle threats are less specific than similar cases where summary judgment was granted to the defendants. Here, as in those cases, the Court should find Plaintiff failed to adduce evidence that Defendant Jackson was deliberately indifferent, and therefore grant summary judgment in her favor.

24

**C.    Plaintiff has failed to establish that deliberate indifference by Defendant Jackson caused him harm.**

Even if Plaintiff could establish that Defendant Jackson was deliberately indifferent, he cannot establish that the deliberate indifference caused him the harm he suffered. Plaintiff has alleged that inmate Jordan attacked him because Jordan was not taking necessary medication.  See generally Plaintiff's Complaint.  However, Plaintiff has not adduced competent evidence showing that inmate Jordan was not taking his medication.  Even if he had, he has not adduced evidence that inmate Jordan's failure to take medication made him more dangerous or aggressive.  Plaintiff cannot show that a failure to take medication was the cause for inmate Jordan's attack (in fact, Jordan later wrote that he struck Plaintiff Baskerville for making a disrespectful comment).  SOMF, ¶23. And even then, Plaintiff has not demonstrated any responsibility or authority for Defendant Jackson, a Housing Unit Officer, to determine and require inmate Jordan take psychological medication.  In short, even if Plaintiff could establish deliberate indifference by Defendant Jackson, he cannot establish that it led to inmate Jordan's attack.

Because the undisputed evidence does not establish and of the necessary prongs for a failure to protect claim, let alone

25

all three, Plaintiff's claim fails as a matter of law and Defendant is entitled to summary judgement.

### POINT V

**PLAINTIFF'S FAILURE TO PROTECT CLAIM ALSO FAILS BECAUSE HE CANNOT SHOW THAT DEFENDANT JACKSON HAD A REASONABLE OPPORTUNITY TO INTERVENE AND REFUSED TO DO SO.**

Plaintiff's failure to protect claim fails because the Defendant Jackson did not have a reasonable opportunity to intervene before inmate Jordan's attack, and actually took reasonable steps to intervene once inmate Jordan did attack. An officer cannot be held liable unless she had a reasonable opportunity to intervene and refused to do so. See Smith v. Mensinger, 293 F.3d 641 (3d. Cir. 2002); see Knox v. Doe, 487 F. App'x 725, 728 (3d Cir. 2012) (per curiam) (affirming dismissal where "even if the prison guards were present during the attack, no facts indicate that they had a realistic and reasonable opportunity to intervene").

**A.  Defendant Jackson did not have a reasonable opportunity to intervene before inmate Jordan's attack because it was not reasonably foreseeable.**

Here, Defendant Jackson did not have a reasonable opportunity to intervene prior to inmate Jordan's attack. Plaintiff's observations of inmate Jordan's behavior did not indicate that Jordan would attack an inmate, much less Plaintiff

26

Baskerville.   They did not indicate Jordan would attack during
lunch.   In fact, Plaintiff Baskerville had directly observed the
threats from inmate Jordan, but did not anticipate inmate
Jordan's attack:

> Q.   Is there any reason why you didn't leave when Mr.
> Jordan sat down near you?
>
> A.   No particular reason, I was eating and the other
> tables were occupied.
>
> Q.   I guess just to clarify what I'm getting at, you had
> expressed that you were concerned about Mr. Jordan's
> behavior, so I'm trying to figure out if there's some
> reason you didn't move away from him?
>
> A.   Because he had been making idle threats prior and he
> had not acted upon them.
>
> ...
> Q.   Do you remember ---
>
> A.   I don't know what hand he used.  All I know I got hit
> while I was eating a sandwich.  I'm right here at the
> table, I'm biting into my sandwich and I get blasted.
>
> Q.   Is it fair to say out of nowhere?
>
> A.   Out of no where, unprovoked.
>
> . . .
>
> Q.   [] When you woke up was Jordan still there?
>
> A.   When I woke up I didn't know what had happened, I
> didn't even really realize that he had struck me until
> they had grabbed him and placed him in a secured area,
> because I never seen it coming.

Ex. A, Excerpts of Deposition of Plaintiff Baskerville, 60:11-
20, 63:6-11, 69:17-22.   In short, the evidence does not

27

demonstrate that Defendant Jackson could have reasonably foreseen or intervened in the attack.  Inmate Jordan attacked suddenly, which did not provide an opportunity to intervene. Moreover, inmate Jordan had made idle threats, and even Plaintiff did not think inmate Jordan's threats here indicated he was going to take action.  Because Defendant Jackson did not have a reasonable opportunity to intervene before the attack, she cannot be held liable for failure to protect.

**B.   Once inmate Jordan attacked Plaintiff Baskerville, Defendant Jackson took reasonable steps to intervene.**

The undisputed facts show that Defendant Jackson properly intervened after inmate Jordan began his attack.  Defendant Jackson called a "Code 33" in response to the incident she perceived on April 6, 2013.  SOMF, ¶21. Essentially, calling a code informs staff of a disruption and informs affected posts of an emergency situation.  SOMF, ¶¶30-32.  This triggers safety protocols and protective steps which may include causing movement in the facility to cease, securing certain locations in the facilities, or taking account of inmates' locations.  SOMF, ¶33.  By calling a code, Defendant Jackson caused officers to respond to secure the scene and escort inmate Jordan and Plaintiff Baskerville for a medical evaluation.  SOMF, ¶¶21-22, 33-34.

28

Defendant Jackson properly did not attempt to physically intervene in the physical altercation between inmate Jordan and Plaintiff Baskerville for several reasons. Defendant Jackson's actions were consistent with the policy effective at that time, IMP-PO#1.01. The IMP specifically provides that:

> "The Housing Unit Officer should attempt to remedy the situation i.e.: verbal order to cease, as soon as notification to the Central Control has been made, **however he/she should not attempt to handle a violent situation alone and should wait for assistance.** All inmates in the affected area are to be secured in their assigned cells."

SOMF, ¶25; see Ex. F, Excerpts of IMP-PO#1.01, p. 18 (emphasis added). This policy directs Housing Unit Officers not to physically intervene on their own for several reasons. SOMF ¶¶25-35; see generally Ex. E, Declaration of Thomas Zwolinski. Responding alone may create a greater risk or improperly escalate the situation, and it is important to inform other officers and to ensure that other inmates are secured from the area and separated to prevent further injury, harm, or disruptions. SOMF, ¶¶28-35, see generally Ex. E, Declaration of Thomas Zwolinski. Given that Defendant Jackson had a responsibility to protect and secure the facility, as well as to other inmates who were not involved with the altercation, the

29

Court should find that by calling a Code 33 she did take appropriate steps to intervene.

## POINT VI

### SUMMARY JUDGMENT SHOULD BE GRANTED TO THE DEFENDANT BECAUSE THEY ARE ENTITLED TO QUALIFIED IMMUNITY.

The court should grant summary judgment to Defendant Jackson because she is entitled to qualified immunity. Courts must engage in a two-part inquiry to determine whether qualified immunity applies. Officers are entitled to qualified immunity unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time of the alleged violation. See, e.g., D.C. v. Wesby, 138 S. Ct. 577, 589 (2018); Pearson v. Callahan, 555 U.S. 223, 232 (2009). Courts have the discretion to consider either prong of the two-part analysis first. Id. at 236.

Here, Defendant Jackson is entitled to qualified immunity both because her actions did not violate a federal statutory or constitutional right, and because there is no clearly established law creating a responsibility to physically intervene in the specific factual scenario that she faced. See supra.

30

**A.   Defendant Jackson's conduct did not violate a federal statutory or constitutional right.**

Defendant Jackson is entitled to qualified immunity because her conduct did not violate the Plaintiffs' rights.   As discussed earlier in this brief, Plaintiff has failed to adduce evidence supporting his claim because he cannot show inmate Jordan posed a substantial risk of serious harm, that Defendant Jackson was deliberately indifferent to a substantial risk, or that deliberate indifference from Defendant Jackson actually caused him harm.   Thus, Plaintiff has failed to establish that Defendant's conduct violated any federal statutory or constitutional right, and Defendant Jackson is entitled to qualified immunity.

**B.   Defendant is entitled to qualified immunity because there was no clearly established precedent that her actions were unlawful.**

Even if the Court determines Defendant Jackson's inaction was unlawful, she is nevertheless entitled to qualified immunity because no precedent clearly established her conduct was unlawful at the time of the alleged violation.   See, e.g., D.C. v. Wesby, 138 S. Ct. 577, 589 (2018); Pearson v. Callahan, 555 U.S. 223, 232 (2009).   "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the

31

objective legal reasonableness of the action, assessed in light
of the legal rules that were clearly established at the time it
was taken." Messerschmidt v. Millender, 565 U.S. 535, 546
(2012). "The inquiry focuses on the state of the relevant law
when the violation allegedly occurred." E.g., Williams v. Sec'y
Pennsylvania Dep't of Corr., 848 F.3d 549, 570 (3d Cir. 2017).
In order to overcome qualified immunity, existing law must have
placed the constitutionality of the defendant's conduct "beyond
debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). The
Supreme Court has ruled that the "contours of the right must be
sufficiently clear that a reasonable official would understand
that what he is doing violates that right." Saucier v. Katz,
533 U.S. 194, 202 (2001).

For a right to be considered sufficiently clear or
definite, there must have been either controlling authority or a
robust consensus of cases of persuasive authority when the
official acted that placed the statutory or constitutional
question beyond debate. E.g., Williams v. City of York,
Pennsylvania, 967 F.3d 252, 259 (3d Cir. 2020); Ashcroft v. Al-
Kidd, 563 U.S. 731, 741 (2011). Qualified immunity thus "gives
government officials breathing room to make reasonable but
mistaken judgments," and "protects all but the plainly
incompetent or those who knowingly violate the law." Id., at

32

743.  This "high standard for 'clearly established' law" is "tilted in favor of shielding government actors." Zaloga v. Borough of Moosic, 841 F.3d 170, 175-177 (3d Cir. 2016).

The Supreme Court recently reiterated "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" White v. Pauly, 137 S. Ct. 548, 552 (2017).  The critical question is "whether the official acted reasonably in the particular circumstances that he or she faced." Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014). "[T]here must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." Mammaro v. N.J. Div. of Child Protection & Permanency, 814 F.3d 164, 169 (3d Cir. 2016); see also Mullenix v. Luna, 136 S. Ct. 305, 312 (2015) (rejecting reliance on cases "too factually distinct to speak clearly to the specific circumstances"); Brosseau v. Haugen, 543 U.S. 194, 201 (2004) (officials immune unless prior case law "squarely governs" the conduct at issue).

Defendant Jackson is entitled to qualified immunity because there was no clearly established precedent establishing that her conduct violated the Plaintiffs' rights.  Plaintiff cannot identify a case suggesting a constitutional violation where a

33

corrections officer tasked at securing an area where inmates are congregating failed to prevent an inmate from suddenly striking another inmate where she had no prior knowledge of the inmate's violent propensity or animosity.

In fact, the opposite is true – cases have repeatedly found no violation in cases where officers had more reason to know of an inmate's potential to commit violence.   As discussed at length above, cases in this and other circuits have repeatedly found failure to protect claims fail when inmates do not have a prior violent history with each other.  See supra.  And, cases have found that the idle threats reported by Plaintiff are insufficient to ground failure to protect claims.  See supra. Plaintiff cannot point to clearly established case law in this circuit showing an officer should have acted differently when idle threats are reported.   He cannot point to clearly established precedent that reports of idle threats put an officer on actual notice that the inmate posed a threat.  And, Plaintiff cannot identify precedent clearly establishing that Defendant Jackson had a reasonable opportunity to intervene. Because Plaintiff has not (and cannot) point to case law that clearly establishes Defendant Jackson's conduct was unconstitutional, Defendant Jackson is entitled to qualified immunity.

**POINT VII**

**SUMMARY JUDGMENT SHOULD BE GRANTED AS TO PLAINTIFFS' CLAIMS FOR COMPENSATORY DAMAGES AND PUNITIVE DAMAGES.**

Plaintiff's complaint states it seeks compensatory and punitive damages from Defendant Jackson.   See Plaintiff's Complaint, p. 13-14.   For the following reasons, these damages should be dismissed.

To the extent Plaintiff seeks damages for mental or emotional distress as a part of his compensatory damages, same should be dismissed.   Plaintiff's ability to receive damages for mental or emotional injury are limited by the PLRA, which provides in pertinent part:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury ...

42 U.S.C. § 1997e(e).   This provision applies regardless of the nature of the underlying substantive violation asserted.   The physical injury requirement of § 1997e(e) requires more than a de minimis physical injury before an emotional injury may be alleged.   Mitchell v. Horn, 318 F.3d 523, 533 (3d Cir. 2003) (following the Fifth, Ninth, and Eleventh Circuit interpretations to hold that § 1997e(e) requires "a less-than-

35

significant-but-more-than-de minimis physical injury as a predicate to allegations of emotional injury."). Here, Plaintiff has not demonstrated that he suffered more than a de minimis physical injury. Indeed, Plaintiff's Complaint enclosed medical records stating that he suffered a "small abrasion" to his lip, and "no other obvious injuries or deformities" were noted. See ECF No. 1, p. 20. A later check in indicated only that his elbow was hurting. See ECF No. 1, p. 21. Plaintiff has not demonstrated any significant or meaningful harm, and therefore, to the extent Plaintiff's claims are permitted to proceed the Court should preclude Plaintiff from recovering emotional compensatory damages.

Moreover, Plaintiff has not supported his claims with expert testimony. Accordingly, Plaintiff has failed to establish evidence of causation between any emotional damages Plaintiff allegedly suffered and this incident. Thus, to the extent the Court permits any claims to proceed, it should preclude Plaintiff from seeking damages for emotional distress.

Plaintiff has also failed to adduce any facts justifying the award of punitive damages. Punitive damages may be imposed against defendants in their individual capacities under 42 U.S.C. § 1983 in cases where the defendant has been found to have acted with "evil motive or intent." E.g., Smith v. Wade,

36

461 U.S. 30, 56 (1983).  Here, Plaintiff has adduced no evidence that the Defendant Jackson acted with evil motive or intent. Accordingly, the Court should dismiss Plaintiff's claims to the extent it seeks punitive damages.

<u>**CONCLUSION**</u>

For all the foregoing reasons, it is respectfully requested that the Court grant Defendant's Motion for Summary Judgment as to all of Plaintiff's claims, and that all of Plaintiff's claims be dismissed with prejudice.

Respectfully submitted,

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By:   s/ Michael Vomacka
Michael Vomacka
Deputy Attorney General

37